UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMIE CAMPOS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| EVDOXIA ZOPOUNIDIS AND | : | 3:09-cv-1138 (VLB) |
| EZ ENTERPRISES LLC, | : | |
|     Defendants. | : | July 20, 2011 |

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. #45]

The plaintiff, Jamie Campos ("Campos"), filed this action against his former employers, Evdoxia Zopounidis and EZ Enterprises, LLC (collectively, the "Defendants"). Campos alleges that the Defendants violated the overtime and minimum wage provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the minimum wage, overtime and wage payment provisions of Connecticut law, Conn. Gen. Stat. §§ 31-58 *et seq.* Campos seeks as damages double his unpaid wages, as well as reasonable attorney's fees and costs. Presently pending before the Court is Campos's partial motion for summary judgment. [Doc. #45]. Campos requests that the Court find as a matter of law that he was an "employee" of the Defendants rather than an "independent contractor," and therefore that he may avail himself of the protections of the FLSA in this lawsuit. For the reasons stated below, Campos's motion is GRANTED.

# I. FACTUAL BACKGROUND

Campos worked as a delivery person for Pappa's Pizzeria from April 1998 until April 2009. Pappa's Pizzeria was owned and operated by EZ Enterprises, LLC, a Connecticut limited liability company. Evdoxia Zopounidis ("Zopounidis") is the sole principal in EZ Enterprises, LLC, and the manager of Pappa's Pizzeria. Zopounidis Aff. [Doc. #47-2] ¶ 3. Zopounidis has owned and operated the restaurant since late 2006 when she bought it from her son, George Volouktis. *Id.* ¶ 4. Pappa's Pizzeria offers onsite dining, pick-up, and food delivery service to its customers. *See http://www.pappaspizzeria.com.*

When she purchased the restaurant in 2006, Zopounidis was aware that Campos had worked for her son, but she did not know how long he had worked at the restaurant, what his duties had been, or how he was compensated. Zopounidis Dep. [Doc. #45-7] at 22-23. Zopounidis did not ask Campos to reapply for his job, nor did she enter into a written employment agreement with him after she purchased the business from her son. *Id.* at 22-23. Instead, he continued to do the same work he had been doing for her son on the same terms and conditions and at the same rate of pay. Campos Aff. [Doc. # 45-8] ¶ 8. Zopounidis claims that Campos told her what his "rates" and schedule were, and she simply agreed to the terms of employment that he dictated. Zopounidis Aff. [Doc. #47-2] ¶¶ 13-21.

Pappa's Pizzeria is open from 11:00 a.m. to 11:00 p.m. on Monday through Saturday and from 12:00 p.m. to 10:00 p.m. on Sunday. Pl. Rule 56(a)(1)

Statement ¶ 6. *Id.* ¶ 7. Campos worked two six hour shifts every day from Monday through Friday, for a total of sixty hours per week. *Id.* ¶ 8. He was paid $8 per hour for the first shift, lasting from 11:00 a.m. until 5:00 p.m., and $6 per hour for the second shift, lasting from 5:00 p.m. until 11:00 p.m. *Id.* ¶ 9. Zopounidis claims that Campos also charged a $1, $2, or $3 fee to the restaurant for each delivery, depending upon the distance and/or neighborhood to which the delivery was being made. Zopounidis Aff. [Doc. #47-2] ¶ 16. She further claims that Campos kept all of the tips he received from his deliveries. *Id.* ¶ 17. According to Zopounidis, the reason Campos was paid at a lower hourly rate for his second shift was that he was able to make more money on delivery fees and tips in the evening hours. *Id.* ¶ 22. Campos used his own vehicle for deliveries and paid his own automotive expenses. *Id.* ¶ 19. Zopounidis provided Pappa's Pizzeria signs to Campos and other delivery persons to place on top of their cars. *Id.* ¶ 33.

Zopounidis paid Campos and her other workers in cash for their work. Pl. Rule 56(a)(1) Statement ¶¶ 25-26. Campos never received a paycheck, pay stub, or any document showing any deductions from his pay. Campos Aff. [Doc. # 45-8] ¶ 12. Campos claims that Zopounidis told him that she preferred to pay him in cash because she did not want to pay taxes, Campos Aff. [Doc. # 45-8] ¶ 13, while Zopounidis contends that Campos insisted on being paid in cash because he was in the United States illegally. Zopounidis Aff. [Doc. #47-2] ¶ 20. Zopounidis did

3

not keep any records of the hours that Campos worked or the wages that he was paid. Pl. Rule 56(a)(1) Statement ¶ 6.

The parties dispute the scope of Campos's job duties. Zopounidis claims that Campos performed no work for the restaurant other than delivering food. Zopounidis Aff. [Doc. #47-2] ¶ 26. Campos, however, contends that he typically made twelve to fifteen deliveries each day, but that he performed several other duties at the restaurant as well. Campos Aff. [Doc. # 45-8] ¶¶ 24-25. In addition to food delivery, Campos claims that he helped to prepare the ingredients for pizza and other food, cleaned the restaurant at the end of every work shift, shoveled snow from the sidewalk in front of the restaurant during winter months, and ran errands such as making bank deposits, going to the supermarket, and delivering mail. *Id.* ¶¶ 17-23.

Zopounidis testified that, in addition to Campos, at any given time she would have a second, part-time delivery person who delivered food and worked thirty hours per week at the restaurant. Zopounidis Dep. [Doc. #45-7] at 35. However, there were times during the day when Campos was the only delivery person present at the restaurant. *Id.* at 36.

During the time that Campos worked for Pappa's Pizzeria from April 1998 to April 2009, Campos had no other regular employment. Campos Aff. [Doc. # 45-8] ¶¶ 30-31. He did not advertise or market his services in any way. *Id.* Campos claims that he always provided advance notice to Zopounidis or her brother, George (who worked for Zopounidis at the restaurant), whenever he was going to

4

be late to work because of an emergency and informed them of the time he would come in. *Id.* ¶¶ 34-35. He also requested a fifteen day leave from Zopounidis to recuperate from a surgery in May 2008. *Id.* ¶¶ 32-33.

Campos stopped working for Pappa's Pizzeria on or about April 6, 2009. Campos claims that Zopounidis let him go from his position when he refused to accept a reduction in wages to $6 per hour for both of his shifts. *Id.* ¶¶ 37-39. Zopounidis admits that, as a result of a decline in the restaurant's business, she told Campos that she would no longer pay him $8 per hour for delivery services and would not agree to charge customers more a $1 delivery charge. Zopounidis Aff. [Doc. #47-2] ¶ 28.

During the period that Campos worked for Zopounidis, Fredericka Bikakis served as the accountant for Pappa's Pizzeria. Bikakis has handled payroll and prepared tax returns for Zopounidis since she purchased the restaurant in 2006. Bikakis Dep. [Doc. #45-11] at 10. Bikakis testified that for most of the period from 2006 to 2009, the Defendants had two employees, both of whom were treated as salaried rather than hourly employees. *Id.* at 18-20. Campos claims that the two employees were Zopounidis' brothers. Bikakis prepared payroll and taxes based solely upon information verbally provided to her by Zopounidis, which she did not independently verify. *Id.* at 18-20, 31. Zopounidis never provided any written records showing the amount of money that she paid her workers. *Id.* The IRS Schedule Cs to the Defendants' tax returns from 2006 to 2009 report the following wage payments to employees: no wages in 2006; $19,500 in 2007; $10,400 in

5

2008; and $11,375 in 2009.  *See* Schedule Cs for 2006-2009 [Doc. ##45-12, 45-13, 45-14, and 45-15).  Zopounidis did not provide Bikakis with any documentation showing that she had paid anyone as an independent contractor, and no payments to independent contractors were reported on the Schedule C's that Bikakis prepared for the Defendants for tax years 2006 to 2009.  Bikakis Dep. [Doc. #45-11] at 25-30.  There are also no records showing that Zopounidis ever deducted federal or state taxes or social security from the wages paid to any of her employees.  *Id.*  Bikakis calculated the employer portions of any deductions for Zopounidis's employees on a quarterly basis.  *Id.*

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor."  *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (internal quotation marks omitted).  "The moving party bears the burden of showing that he or she is entitled to summary judgment." *Huminski*, 396 F.3d at 69.  "[T]he burden on the moving party may be discharged by 'showing' – that is pointing out to the district court – that there is an absence

6

of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).

### III. DISCUSSION

In their answer, the Defendants assert that they are not liable to Campos under the FLSA because, at all relevant times, Campos was an independent contractor and therefore he was not entitled to wages, minimum wages, or overtime. [Doc. #27], Affirmative Defenses ¶ 1. Campos now moves for partial summary judgment, asking the Court to hold as a matter of law that he is an employee under the FLSA and therefore may avail himself of the FLSA's protections. The FLSA broadly defines an employee as "any individual employed by an employer" and defines "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). Independent contractors are not covered by the FLSA. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988). The United States Supreme Court has stated that exemptions to coverage under the FLSA "are to be narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

In light of the broad definitional scope and remedial purpose underlying the FLSA, the Second Circuit has endorsed an "economic realities test" under

which individuals are considered to be employees if "as a matter of economic reality [they] are dependent upon the business to which they render service." *Frankel v. Bally, Inc.*, 987 F.2d 86, 89 (2d Cir. 1993).  The Second Circuit has identified the following five factors that a court should consider in applying the economic realities test to determine whether workers are employees or independent contractors for purposes of the FLSA:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence and duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (citing *United States v. Silk*, 331 U.S. 704, 716 (1947)).

"No one of these factors is dispositive; rather the test is based on a totality of the circumstances."  *Id.* at 1059.  "The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."  *Id.*

### A. Employer's Degree of Control over Worker

The following factors are relevant to determining whether an entity has exercised formal control over its workers:

> [W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Carter v. Dutchess Cmty. College*, 735 F.2d 8, 12 (2d Cir. 1984).

The parties dispute the scope of Campos's job duties. Zopounidis claims that Campos performed no work for the restaurant other than delivering food. Campos, however, claims that he performed many other duties at the direction of Zopounidis, including preparing ingredients, cleaning the restaurant, shoveling snow, and running errands. Since the evidence must be viewed in the light most favorable to the nonmoving party on a motion for summary judgment, the Court accepts Zopounidis's version of the facts and assumes for purposes of the instant motion that Campos only delivered food for the restaurant. Even assuming that delivering food was his only duty, however, the record supports a finding that Zopounidis exercised sufficient control over his work to be indicative of employee status.

First, Zopounidis had the power to hire and fire Campos. Campos worked full-time at Pappa's Pizzeria for eleven years, from April 1998 to April 2009. When Zopounidis purchased the restaurant from her son in 2006, she continued Campos's employment, and did not ask him to reapply or reduce their arrangement to a written agreement. Since Campos did not enter into a written agreement with Zopounidis, and Zopounidis was the owner and sole manager of the restaurant, there can be no reasonable dispute that she "hired" him as a delivery person and could have terminated him from the job at any time. *See Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-CV-746 (WWE), 2010 WL 918079, at *3 (D. Conn. Mar. 11, 2010) (finding that defendant's status as sole owner and president of the LLC that bought and owned restaurant for several years should

9

have afforded him the power to exercise control over kitchen workers even though his son managed the restaurant).

Second, the record reflects that Zopounidis had control over Campos's work schedule and conditions of employment. Campos worked exclusively for the Defendants. He was required to be at the restaurant from 11:00 a.m. to 11:00 p.m., Monday through Friday, a total of sixty of the eighty-four hours that the restaurant was open each week. At times during the day, he was the only delivery person at the restaurant. Campos informed Zopounidis or her brother when he had an emergency that would cause him to be late to work, and he requested leave from work when he needed time to recuperate from surgery in May 2008. These facts are inconsistent with the Defendants' argument that Campos set his own schedule and "could come and go as he pleased." Def. Mem. at 3. Zopounidis set Campos's hourly rate of pay and the delivery fee he charged. She provided signage for his vehicle denoting her restaurant. Furthermore, Campos delivered food only for and at the direction of Pappa's Pizzeria. By the very nature of his job, Zopounidis exercised control over his schedule and conditions of employment by directing him where to deliver orders placed by the restaurant's customers.

Third, Zopoundis's self-serving statements in her affidavit that Campos dictated his rate of pay and work schedule and that she simply acquiesced do not create a genuine issue of material fact for trial. *See Brock*, 840 F.2d at 1059 (noting that "an employer's self-serving label of workers as independent

contractors is not controlling"); *Ramsey v. Goord*, 661 F. Supp. 2d 370, 384 (W.D.N.Y. 2009) ("Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion.") (citing *Coniglio v. High Services, Inc.*, 495 F.2d 1286, 1292 (2d Cir. 1974)). As an initial matter, "the subjective intent of the parties in forming the employment relationship has little to no significance in determining whether a plaintiff is an independent contractor or employee." *Trejos v. Edita's Bar & Rest., Inc.*, No. CV-08-1477 (ARR), 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009). Therefore, even if Zopounidis did not intend for Campos to be an employee, this is not dispositive of the issue. More importantly, the evidence in the record is inconsistent with Zopounidis's assertions. For instance, Zopounidis concedes that, in April 2009, she informed Campos that would no longer pay him $8 and would no longer charge a delivery fee of more than $1, which prompted the end of Campos's work for the restaurant. This admission demonstrates that Zopounidis did in fact have the power to decide what Campos's rate of pay and delivery charge would be. In addition, Zopounidis claims that it was Campos who insisted on being paid in cash, but concedes that it was her general practice to pay all of her workers in cash. Finally, as previously noted, Zopounidis's assertion that Campos set his own schedule and could come and go whenever he wanted is contradicted by both the regularity of his hours and the nature of his job, which entailed making deliveries to customers who placed delivery orders with Pappa's Pizzeria.

Fourth, although Zopounidis did not maintain employment records for Campos, she had the power to do so and thus this is not inconsistent with a finding of control in the context of this case. Zopounidis paid all of her workers, including Campos, in cash. Zopounidis' accountant testified that she prepared payroll and taxes based upon information that Zopounidis gave to her verbally; Zopounidis never provided her with any written employment records. Therefore, Zopounidis's apparent failure to maintain employment records for Campos was consistent with her general practice.

Accordingly, as Zopounidis controlled the terms, place, manner of, and compensation for Campos's work, she exercised a sufficient degree of control such that the first factor weighs in favor of Campos.

### B. Opportunity for Profit or Loss and Investment in the Business

The second factor is the worker's opportunity for profit or loss and investment in the business. Although the Second Circuit has not addressed this factor in a case comparable to the instant matter, the Court finds cases outside the Circuit to be instructive. For instance, in *Herman v. Express Sixty-Minute Delivery Service, Inc.*, 161 F.3d. 299, 303-04 (5th Cir. 1998),[1] the Fifth Circuit found that the relative investment of on-call courier delivery service drivers was insignificant as compared to the investment of the delivery service. The drivers in *Herman* provided their own vehicles, paid their own automotive expenses and

---

[1] The Fifth Circuit's test for determining whether a worker is an independent contractor or employee for purposes of the FLSA is substantially similar to the test adopted by the Second Circuit. *Id.*

12

supplied their own uniforms, radios and pagers, biohazard bags and dry ice.  *Id.* at 302.  The delivery service, however, made a far more significant investment in the business, which included leases on two offices, biweekly payroll, a $25,000 computer system and other expenses.  *Id.* at 304.  The Fifth Circuit also noted that most drivers also used their vehicles for personal purposes, which diluted the significance of their investment in the business.  *Id.*  Thus, the Fifth Circuit found this factor to weigh in favor of a finding that the drivers were employees rather than independent contractors.  *Id.*  Here, Campos's relative investment was even smaller by comparison to the Defendants' investment in the restaurant.  Campos merely supplied a vehicle, which he also used for personal purposes, and paid all related expenses.  By comparison, the Defendants invested in the restaurant premises, the supplies, telephones, vehicle signage, payroll service, utilities and all the other expenses of operating the business.

Further, an indicium of the opportunity for profit or loss recognized by the Fifth Circuit in *Herman* was the delivery drivers' ability to choose how much they wanted to work as well as which jobs to work, thereby forgoing less profitable jobs in favor of more profitable jobs.  *Id.*  In this case, Campos had no discretion.  He was required to make all assigned deliveries during his shift and Zopounidis set the delivery fee and his hourly rate of compensation unilaterally.  *See Gustafson v. Bell Atlantic Corp.,* 171 F. Supp. 2d 311, 325 (S.D.N.Y. 2001) (finding that former chauffeur for company who formed his own corporation to provide driving services at company's behest made insubstantial investment in the

business and had minimal opportunity for profit or loss where he was economically dependent on the company for all of his revenues).

Similarly, in *Harrell v. Diamond A. Entertainment, Inc.,* 992 F. Supp. 1343, 1350 (M.D. Fla. 1997), the district court held that an exotic dancer's investment in the business was minor compared to the nightclub's investment. The plaintiff in *Harrell* made sizeable expenditures from her own account for costumes, hairstyling, make-up and shoes. *Id.* at 1350. However, the district court found these expenditures insignificant in comparison to the nightclub's investment in the business for such things as advertising, facilities and maintenance. *Id.* The nightclub also exercised control over the dancer's profit-making ability by establishing a fee for table dances, having a disc jockey announce the fee on a regular basis, and obligating each dancer to perform on center stage during her "stage rotation." *Id.* at 1349-50. Here, as in *Harrell*, there is no evidence that Campos had any influence over the management of the restaurant, such as the food it offered or the prices it charged. Zopounidis received requests for and scheduled the deliveries, determined when and which deliveries Campos made, and set the hourly rate and delivery fee he received. Campos had no control over customer volume or the delivery area. Thus, Campos was totally dependent on Zopounidis for work and had no control over the work he performed or the amount he earned.

Campos was required to work at the restaurant 60 hours per week, during which time he could not make deliveries for others. He was required to make all

14

assigned deliveries during his rotation and could not select the more profitable deliveries. He did not advertise delivery services and had no role in developing either the restaurant or the delivery business. He was paid an hourly rate and worked at timed determined by Zopounidis. He made deliveries to the areas dictated by Zopounidis unilaterally. He supplied a vehicle and paid his own automotive expenses, but bore none of the other more substantial expenses of the business, such as rent, utilities, supplies, vehicle signage, payroll, tax or other business expenses. Campos's nominal investment in the business and inability to earn a profit militate in favor of a holding that Campos was an employee rather than an independent contractor. Therefore, this factor weighs in favor of Campos.

### C. Degree of Skill and Independent Initiative Required

The third factor is the degree of skill or independent initiative required to perform the work. There is no evidence that Campos's job as a delivery person required him to possess any particular degree of skill. Campos did not need education or experience to perform his job. Although he needed a driver's license in order to legally drive his vehicle for deliveries, the possession of a driver's license and the ability to drive an automobile is properly characterized as a "routine life skill" that other courts have found to be indicative of employment status rather than independent contractor status. *E.g. Edwards*, 251 F. Supp. 2d at 1099 (finding that position of home health care provider did not require skill

and independent initiative because "most of the tasks required . . . are routine life skills such as cooking, cleaning, and balancing a checkbook").

Moreover, even in cases involving skilled workers who require several years of specialized training, courts have noted that skill in itself is not indicative of independent contractor status where the workers do not exercise significant initiative in locating work opportunities. *See Brock*, 850 F.2d at 1060; *Gayle v. Harry's Nurses Registry*, No. CV-07-4672(CPS)(MDG), 2009 WL 605790, at *8 (E.D.N.Y. Mar. 9, 2009). In *Brock*, for example, the Second Circuit found that nurses who worked as temporary health-care personnel were employees because, although they were skilled workers, the record indicated that they depended entirely on referrals to find job assignments and did not use their skills in any independent way. 850 F.2d at 1060. In this case, Campos's job was to deliver food for Pappa's Pizzeria exclusively. There is no evidence in the record that Campos exercised any independent initiating in performing this job. Instead, Campos only delivered food to customers who placed delivery orders with the restaurant. He did not advertise his delivery services separately and independently from the restaurant. Therefore, this factor weighs in favor of Campos.

### *D. Permanence and Duration of Working Relationship*

The fourth factor is the permanence and duration of the working relationship. Where an individual is working for a business under a term agreement, such as a year-to-year contract, courts have found the relationship to be more indicative of

16

an independent contractor than an employee. *See, e.g., Edwards*, 251 F. Supp. 2d at 1100. On the other hand, where there is no agreement dictating a particular term of work and the worker puts in significant hours over a substantial period of time, courts have found this factor to weigh in favor of employment status. *See, e.g., Scwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 702 (S.D.N.Y. 2005) (finding this factor to weigh in favor of finding employment status where plaintiff worked exclusively for defendants for four years performing the same duties); *Rosso v. PI Mgmt. Assocs., LLC*, No. 02 Civ. 1702(KNF), 2005 WL 3535060, at *6 (S.D.N.Y. Dec. 23, 2005) (work in full-time position over a two-year period sufficient to demonstrate employment status). In this case, Campos worked full-time for Zopounidis for three years, and worked in the same position for a total of eleven years. There is no evidence in the record that the parties ever considered their working relationship to be temporary or fixed in duration. Therefore, this factor weighs in favor of Campos.

### E. Extent to which Work is Integral to Business

The final factor is the extent to which the work performed by the worker was an integral part of the employer's business. Pappa's Pizzeria is a restaurant that offers delivery service to its customers. Indeed, delivery services are prominently advertised on the restaurant's website. *See http://www.pappaspizzeria.com.* Campos worked on a full-time basis delivering food for the restaurant for eleven years, the last three for the Defendants. It cannot be seriously disputed that the job of a delivery person for a restaurant that

17

provides delivery serves is integral to the business. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 195 (S.D.N.Y. 2003) (finding that delivery workers for a drug store were integral to the business because the employer "used the delivery workers to extend its shelves and counters to the homes of customers, allowing them the convenience of shopping from home instead of having to come physically into a store"). Therefore, this factor weighs in favor of Campos.

### *F. Balancing of Five Factors*

Each of five factors enumerated in the "economic reality" test to determine whether a worker is an employee or independent contractor weighs in favor of Campos. The evidence in the record demonstrates that Zopounidis exercised control over Campos, that Campos had little to no opportunity for profit or loss and an insubstantial investment in the business, that Campos did not need skill or independent initiative to perform his job as a delivery person, that Campos worked for Pappa's Pizzeria on a permanent rather than a temporary basis and did so over a substantial period of time, and that Campos's work was integral to the restaurant's business. Therefore, considering the totality of the circumstances, the Court concludes that the evidence clearly demonstrates that, as a matter of economic reality, Campos was an employee of the Defendants rather than an independent contractor at all times during their working relationship. Campos's motion for partial summary judgment is GRANTED.

## IV. CONCLUSION

Based on the foregoing reasoning, Campos's motion for partial summary judgment [Doc. #45] is GRANTED. The Court holds that Campos was an employee of the Defendants rather than an independent contractor. Therefore, he may avail himself of the FLSA's protections in this lawsuit.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 20, 2011.